IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARY KAY INC., | § |
| | § |
| Plaintiff-counterdefendant, | § |
| | § Civil Action No. 3:17-CV-2634-D |
| VS. | § |
| | § |
| GERALD MATTHEW REIBEL, | § |
| | § |
| Defendant-counterplaintiff, | § |
| | § |
| and | § |
| | § |
| JOHN DOES 1-10, | § |
| | § |
| Defendants. | § |

MEMORANDUM OPINION
AND ORDER

In this action arising from defendant-counterplaintiff Gerald Matthew Reibel's ("Reibel's") allegedly unauthorized sale of plaintiff-counterdefendant Mary Kay Inc.'s ("Mary Kay's") expired products, Mary Kay moves under Fed. R. Civ. P. 12(b)(6) to dismiss Reibel's antitrust counterclaims; moves under Rule 12(f) to strike two of Reibel's affirmative defenses; and moves under Rule 12(f) to strike Reibel's answer, or, in the alternative, to strike additional impertinent allegations in the answer or for leave to reply to these allegations pursuant to Rule 7(a)(7). For the following reasons, the court grants Mary Kay's motion to dismiss, denies Mary Kay's motions to strike, grants Mary Kay's alternative motion for leave to file a Rule 7(a) reply, and grants Reibel leave to replead.

I

Mary Kay is a global manufacturer and wholesale distributor of cosmetics, skin care products, toiletries, and related products that are available to the public exclusively through Mary Kay's Independent Beauty Consultants ("Consultants"). Defendants are one or more individuals who have sold, and continue to sell, expired Mary Kay products without Mary Kay's authorization through an eBay storefront named "reibjerr." Mary Kay brings claims for trademark infringement, in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a)(1)(A); false advertising, in violation of 15 U.S.C. § 1125(a)(1)(B); unfair competition, in violation of 15 U.S.C. § 1125(a); trademark dilution, in violation of 15 U.S.C. § 1125(c); trademark dilution, in violation of Tex. Bus. & Com. Code Ann. § 16.103 (West Supp. 2017); trademark infringement and unfair competition, under Texas common law; and tortious interference with existing contracts.

In Reibel's answer to Mary Kay's complaint, he asserts affirmative defenses of the first sale doctrine, unclean hands, trademark misuse, and nominative fair use, and he brings counterclaims for declaration of trademark non-infringement; violation of the Sherman Antitrust Act ("Sherman Act"), 15 U.S.C. § 2; violation of Texas Bus. & Com. Code Ann. § 15.05(b) (West 2011); and injunctive relief. Mary Kay moves to dismiss Reibel's antitrust counterclaims—counterclaims 2 and 3—under Rule 12(b)(6); moves to strike Reibel's second and third affirmative defenses under Rule 12(f); and moves under Rule 12(f) to strike Reibel's answer, or, in the alternative, to strike additional impertinent allegations in the answer and/or for leave to reply to these allegations under Rule 7(a)(7). Reibel opposes

Mary Kay's motion.

II

Mary Kay moves to dismiss Reibel's antitrust counterclaims, i.e., his counterclaims for violations of 15 U.S.C. § 2 and Tex. Bus. & Com. Code Ann. § 15.05(b), contending that Reibel lacks antitrust standing to bring these claims and that he has failed to plead facts establishing any of the elements of these claims.

A

The court begins by setting out the pertinent standards that apply to Mary Kay's motion, beginning initially with the standards that apply to a Rule 12(b)(1) motion. Although Mary Kay correctly brings its motion to dismiss based on lack of antitrust standing under Rule 12(b)(6), *see, e.g., Norris v. Hearst Trust*, 500 F.3d 454 (5th Cir. 2007) (affirming Rule 12(b)(6) dismissal for lack of antitrust standing), to the extent Mary Kay also intends to assert an Article III standing challenge based on the absence of a constitutional injury-in-fact, *see infra* note 2, this challenge is properly brought under Rule 12(b)(1).

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id*. The court assesses a facial challenge

as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* (citation omitted) (citing *Paterson*, 644 F.2d at 523). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the [counter]plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive Mary Kay's motion to dismiss, Reibel must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S.

at 679 (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

B

Mary Kay moves to dismiss Reibel's counterclaims on the ground that Reibel lacks antitrust standing.

1

"[T]he requirement that a claimant have 'standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

It is well-settled that "the irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. These elements are (1) an injury-in-fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendant's actions; and (3) that the injury will likely be redressed by a favorable decision. *See, e.g., Bennett v. Spear*, 520 U.S. 154, 167 (1997); *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009). To obtain injunctive relief, a plaintiff must be

"likely to suffer future injury." *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[.]" *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). The threat of future injury to the plaintiff "must be both real and immediate, not conjectural or hypothetical." *Lyons*, 461 U.S. at 102 (internal quotation marks and citations omitted).

Prudential standing, by contrast, does not emanate from the Constitution, and it instead "embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 474 (5th Cir. 2013) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)). The doctrine asks

> whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit, whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch, and whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 363 (5th Cir. 1999).

2

"Because 'Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation,' an antitrust plaintiff must do more than meet the requirements of Article III to establish its standing to bring suit." *Sanger Ins. Agency v. HUB Int'l, Ltd.*, 802 F.3d 732, 737 (5th Cir. 2015) (citations omitted). "Standing to pursue an antitrust suit exists only if a plaintiff shows: 1) injury-in-fact, an injury to the plaintiff proximately caused by the defendants' conduct; 2) antitrust injury; and

3) proper plaintiff status, which assures that other parties are not better situated to bring suit."
*Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009) (quoting *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. Alliance*, 123 F.3d 301, 305 (5th Cir. 1997)).[1]

Mary Kay argues that Reibel lacks antitrust standing because he has failed to plead an antitrust injury.[2] The court agrees. An antitrust injury is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). The purpose of the antitrust laws is to protect "*competition*, not *competitors*." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993).

In support of his Sherman Act counterclaim,[3] Reibel alleges that

---

[1] Texas courts follow these same antitrust standing requirements for suits brought under Tex. Bus. & Com. Code Ann. § 15.05(b). *See, e.g., In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 709 (Tex. 2015) ("[C]ourts have held that standing to pursue an antitrust suit [under the Texas Free Enterprise and Antitrust Act of 1983] exists only if a plaintiff shows (1) injury-in-fact, an injury to the plaintiff proximately caused by the defendant's conduct; (2) antitrust injury; and (3) proper plaintiff status, which assures that other parties are not better situated to bring suit.").

[2] It is unclear whether Mary Kay also intends to mount an Article III challenge to Reibel's antitrust counterclaims. Although Mary Kay clearly focuses on Reibel's lack of antitrust standing, it also argues that "Reibel has not alleged that he has suffered *any* injury." P. Br. 5 (emphasis added). Assuming that Mary Kay does intend to move to dismiss Reibel's antitrust counterclaims based on a lack of Article III standing, the court denies the motion. Reibel alleges that he has been damaged as a result of Mary Kay's "indefensible and abusive" trademark claims and litigation threats, and he characterizes this lawsuit as "objectively baseless." In combination, these are sufficient allegations of an injury-in-fact for purposes of Article III standing.

[3] In support of his Texas unfair competition counterclaim, Reibel alleges that "Mary Kay is attempting with this case and others like it to avoid First Sale Doctrine by alleging a narrow exception as discussed *supra*, but the facile argument is a mere excuse which no

- 7 -

> Mary Kay's practice of bringing suit against any individual who resells May Kay product [and] Mary Kay's practice of threatening suit for behavior that its agents know, or should know, does not constitute trademark infringement, and focuses attention on small vendors who are unsophisticated and more likely to just pay Mary Kay some small amount and then leave the market, rather than to hire an attorney and defend their behavior as non-infringing in a foreign venue, as most are not in Texas . . . constitutes an attempt to monopolize[.]

Countercls. ¶¶ 170, 171. It is clearly established, however, that the antitrust laws are not intended to prevent a manufacturer's "monopoly over the distribution of its own products." *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 488 (5th Cir. 1984); *see also United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 393 (1956) ("[O]ne can theorize that we have monopolistic competition in every nonstandardized commodity with each manufacturer having power over the price and production of his own product. However, this power that, let us say, automobile or soft-drink manufacturers have over their trademarked products is not the power that makes an illegal monopoly."). Because Reibel has failed to allege an injury of the type the antitrust laws were intended to prevent, the court concludes that he lacks antitrust standing and dismisses his antitrust counterclaims.

C

Alternatively, the court grants Mary Kay's motion to dismiss on the ground that Reibel has failed to plausibly allege the necessary elements of his antitrust counterclaims.

---

Texas court should accept." Countercls. ¶ 175.

1

Section 2 of the Sherman Act prohibits the abuse of monopoly power as well as any "attempt to monopolize . . . any part of the trade or commerce among the several States." 15 U.S.C. § 2.[4] "To prevail on an attempted monopolization claim, a plaintiff must show: '(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'" *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 891 (5th Cir. 2016) (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993)).

2

Mary Kay maintains that Reibel has failed to plead any of the elements of his antitrust counterclaims. It posits that Reibel has failed to define the applicable product and geographic market that he asserts Mary Kay is monopolizing or attempting to monopolize; Reibel has failed to identify any actions by Mary Kay that could be construed as predatory or exclusionary conduct; to the extent Reibel relies on the so-called "sham" exception to the *Noerr-Pennington* doctrine, Mary Kay's actions to enforce its trademark rights are consistent

---

[4]Tex. Bus. & Com. Code Ann. § 15.05(b) provides that "[i]t is unlawful for any person to monopolize, attempt to monopolize, or conspire to monopolize any part of trade or commerce." "Because section 15.05(b) of the Texas Antitrust Act is comparable to section 2 of the Sherman Antitrust Act, [Texas courts] look to federal law interpreting section 2 of the Sherman Act for guidance in interpreting section 15.05(b) of the Texas Antitrust Act." *Caller-Times Pub. Co. v. Triad Commc'ns, Inc*, 826 S.W.2d 576, 580 (Tex. 1992); *see also* Tex. Bus. & Com. Code Ann. § 15.04 ("The provisions of this Act . . . shall be construed in harmony with federal judicial interpretations of comparable federal antitrust statutes to the extent consistent with this purpose.").

with Lanham Act case law, including authority from this court that recognizes a basis in suit to prevent unauthorized sales of materially different products that, among other things, lack quality controls of genuine products, and Reibel cannot credibly argue that this lawsuit is objectively meritless given that he has admitted that he has been selling Mary Kay's products through his eBay store, he is not a Mary Kay Consultant, he is not affiliated with Mary Kay, the products he sells bear Mary Kay trademarks, he uses Mary Kay marks to let his customers know what he is selling, and he sells many of his products beyond Mary Kay's three-year shelf life; and Reibel has failed to plausibly allege that Mary Kay has a specific intent to monopolize or a dangerous probability of achieving monopoly power in a relevant market.

Reibel does not specifically respond to any of Mary Kay's arguments directed at his antitrust counterclaims; instead, he moves, in the alternative, for leave to replead his affirmative defenses.

3

The court grants Mary Kay's motion to dismiss Reibel's antitrust counterclaims, at least for the reason that Reibel has failed to adequately plead that Mary Kay had a specific intent to monopolize or that there was a dangerous probability of achieving monopoly power. Although Reibel alleges that Mary Kay brings or threatens to bring lawsuits that it knows are legally unsupported, he does not plausibly plead that Mary Kay did so with the intent to monopolize or that there was a dangerous probability that Mary Kay would achieve monopoly power. Accordingly, for this alternative reason, the court grants Mary Kay's

motion and dismisses Reibel's antitrust counterclaims.

III

The court next considers whether Reibel's affirmative defenses of unclean hands and trademark misuse should be stricken in whole or in part under Rule 12(f), which permits the court to strike from the pleadings "any redundant, immaterial, impertinent, or scandalous matter."

A

In support of his unclean hands defense, Reibel alleges that Mary Kay Consultants have no recourse to return unneeded product to Mary Kay, leaving them to absorb inventory with no way to dispose of it, because Mary Kay refuses to accept returns and pay refunds based on lack of use, lack of sale, or any alleged shelf-life; that Mary Kay's three-year shelf life is unrelated to actual shelf life, but was, instead, adopted to reduce a Consultant's ability to reduce inventory; that

> Mary Kay's policies are designed to sheer its own consultants in this pyramid scheme while claiming to protect consumers, but with this suit and others like it, Mary Kay seeks to employ the judicial system to continue the charade by browbeating anyone who dares to resell product sold to them from the unfortunate souls who were once sucked into promises made by Mary Kay recruiters[,]

Aff. Defs. ¶ 141; that Mary Kay's policies drive its ex-Consultants to offer their inventories to third-party resellers like Reibel, who purchases Mary Kay's products through impersonal online sales as they are offered and does not seek deliberate interference with current distributors; and that Reibel "asserts unclean hands as an affirmative defense against the

- 11 -

claims of trademark infringement and injunctive relief based on Mary Kay's abusive policies regarding resell of the products it forces its consultants to keep even after it leaves the oppressive Mary Kay environment," *id.* ¶ 144

In support of his affirmative defense of trademark misuse, Reibel alleges that Mary Kay seeks to abuse the trademark system by making spurious claims of infringement when none exists; that Mary Kay's actions in this regard are an attempt to steal the value of ex-Consultant inventory and maintain an iron grasp on all downstream commerce of its products rather than to use trademarks to facilitate the public's ability to distinguish among competing products with source identifiers; and that Mary Kay's attempts to extend trademark use beyond Congress's intent constitute trademark abuse and should prohibit the remedies that Mary Kay seeks.

B

Without suggesting that Reibel's affirmative defenses of unclean hands or trademark misuse can withstand a motion to dismiss, for judgment on the pleadings, or for summary judgment, or that he can prevail on these defenses at trial, the court denies Mary Kay's motion to strike them.

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f). The decision to grant a motion to strike is within the court's discretion. *Jacobs v. Tapscott*, 2004 WL 2921806, at *2 (N.D. Tex. Dec. 16, 2004) (Fitzwater, J.), *aff'd on other grounds*, 277 Fed. Appx. 483 (5th Cir. 2008). Motions to strike a portion of a pleading are generally viewed with disfavor and are

seldom granted, because these motions seek a "drastic remedy" and are often "sought by the movant simply as a dilatory tactic." *FDIC v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993) (Cummings, J.) (citing *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 206 F.2d 862, 868 (5th Cir. 1962)).

When deciding whether an affirmative defense is an "insufficient defense," the court does not apply the pleading standards set forth in *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662. *See Klein v. Fed. Ins. Co.*, 2014 WL 4476556, at *5 (N.D. Tex. Sept. 11, 2014) (Fitzwater, C.J.) (citing *Mary Kay, Inc. v. Dunlap*, 2012 WL 2358082, at *8 (N.D. Tex. June 21, 2012) (Fitzwater, C.J.); *SEC v. Cuban*, 798 F.Supp.2d 783, 795 n.13 (N.D. Tex. 2011) (Fitzwater, C.J.); *EEOC v. Courtesy Bldg. Servs., Inc.*, 2011 WL 208408, at *2 (N.D. Tex. Jan. 21, 2011) (Fitzwater, C.J.)). Instead, the court applies the "fair notice" pleading standard for affirmative defenses set forth in *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). *See, e.g., Cuban*, 798 F.Supp.2d at 795 n.13. To adequately plead an affirmative defense, there must be enough factual particularity to give the plaintiff "fair notice of the nature of the affirmative defense and prevent unfair surprise." *Mary Kay*, 2012 WL 2358082, at *8 (quoting *Cuban*, 798 F.Supp.2d at 795 n.13). "Although . . . in some instances merely pleading the name of the affirmative defense may be sufficient, a 'fact-specific inquiry' is required to determine whether the pleadings set forth the 'minimum particulars' needed to ensure the plaintiff is not the victim of unfair surprise." *Id.* (quoting *Woodfield*, 193 F.3d at 362).

The court holds that Reibel has pleaded the minimum particulars that are necessary

to ensure that Mary Kay is not unfairly surprised by the bases for his affirmative defenses of unclean hands and trademark misuse. *See Answer, Aff. Defs*. at ¶¶ 138-48.[5] Accordingly, the court denies Mary Kay's motion to strike Reibel's affirmative defenses of unclean hands and trademark misuse.

IV

A

Mary Kay also moves under Rule 12(f) to strike parts of Reibel's answer. It maintains that assertions in the following paragraphs bear no relation to Mary Kay's allegations or the counterclaims or affirmative defenses pleaded in the answer: ¶¶ 18, 20, 138-39, 141-42, 146; that the following paragraphs contain allegations that are immaterial to any applicable standard in this case and serve no purpose other than to obfuscate the relevant issues: ¶ 18, 34, 130-32; that allegations in the following paragraphs unnecessarily show a disdain for the

---

[5]The court recognizes that "a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a mater of law." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982). Thus, for example, this court has stricken under Rule 12(f) defenses that are unavailable as a defense to the plaintiff's cause of action. *See, e.g., J&J Sports Prods., Inc. v. Willie Ray's Private Room, Inc.*, 2017 WL 514422, at *3 (N.D. Tex. Feb. 8, 2017) (Fitzwater, J.) (striking affirmative defense of failure to mitigate damages where plaintiff sought only statutory damages and injunctive relief to which failure to mitigate defense was inapplicable). Mary Kay does not contend that the defenses of unclean hands or trademark misuse are generally unavailable as defenses to its trademark infringement claims. The court concludes that Mary Kay's challenges—which go to the merits of Reibel's unclean hands and trademark misuse defenses—are more appropriately addressed in the context of a motion to dismiss, for judgment on the pleadings, or for summary judgment. *See, e.g., Microsoft Corp. v. Worth*, 2007 WL 1975574, at *3 (N.D. Tex. July 5, 2007) (Fish, C.J.) (denying motion to strike trademark misuse defense and noting that "[t]he Rule 12(f) standard calls for a connection between the claims and the defense, not an absolute determination of the efficacy of the defense on the merits.").

civility of these proceedings and impugn the integrity of Mary Kay in bringing this litigation: ¶¶ 9, 12, 18, 29, 35, 133, 146, 155, 163, 168, 170, 172, 176, 178; that allegations in the following paragraphs needlessly target Mary Kay's products and communications with disparagement irrelevant to the action: ¶¶ 17, 24, 27; that the use of sarcasm in the following paragraphs interjects needless and disruptive ambiguity as to the scope of Reibel's denial or admission: ¶¶ 10, 12, 15-17, 21; and that if the court dismisses Reibel's antitrust counterclaims and affirmative defenses of unclean hands and trademark misuse, it should strike as immaterial and prejudicial the allegations in the following paragraphs related to these claims and defenses: ¶¶ 9, 12, 17, 18, 35, 132, 138-148, 153, 163, 169-77.

In response, Reibel contends that the allegations in his answer are fair responses to the substance of Mary Kay's assertions; that his allegations regarding Mary Kay's contracts relate to his argument that the contracts are unconscionable and lead to consultants' sales outside of the Mary Kay network; and that it is no secret that Mary Kay operates a pyramid scheme, and there are numerous sources that validate Reibel's allegations.[6]

B

As stated above, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f). "Matter will not be

---

[6]Reibel also incorrectly argues that Mary Kay's response is untimely. The court on February 13, 2018 granted Mary Kay's motion to extend from February 14, 2018 until February 28, 2018 the deadline for responding to Reibel's answer, counterclaims, and affirmative defenses. Mary Kay's motion, which was filed on February 28, 2018, is therefore timely.

stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied." *Pan Am. Life Ins. Co. v. Blanco*, 311 F.2d 424, 428 n.13 (5th Cir. 1962) (quoting 2 Moore's Fed. Prac., 2d ed., P12.21(2)); *see also Florance v. Buchmeyer*, 500 F.Supp.2d 618, 645 (N.D. Tex. 2007) (Ramirez, J.) (Rule 12(f) motions "are viewed with disfavor" and should be granted "only when the pleading to be stricken has no possible relation to the controversy.") (citations omitted)), *rec. adopted*, 500 F.Supp.2d at 624 (N.D. Tex. 2007) (Lynn, J.).

With the exception of Reibel's allegations that relate solely to his now-dismissed antitrust counterclaims, Mary Kay has not shown that the statements in question are immaterial or impertinent to the controversy itself. *See United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012) (concluding that district court did not abuse its discretion in denying motion to strike where "disputed statements were material and pertinent to the underlying controversy"). Reibel intends to defend against Mary Kay's trademark infringement claims based on theories of unclean hands and trademark misuse, and the allegations that Mary Kay seeks to strike relate to these defenses. Stated differently, Mary Kay has failed to show that Reibel's allegations can have no possible bearing on the subject matter of the litigation.

Moreover, Mary Kay has not demonstrated how it will be prejudiced if the allegations it cites, including allegations that relate only to Reibel's antitrust counterclaims, are not stricken. "[W]hen there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed and substantial questions of law upon a

motion to strike." *Augustus*, 306 F.2d at 868 (footnotes omitted). "Prejudice results to the moving party where the allegation or defense would have 'the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party.'" *Dishner v. Universal Health Servs., Inc.*, 2018 WL 1617844, at *2 (N.D. Tex. Apr. 4, 2018) (Fitzwater, J.) (citations omitted). Although Mary Kay contends that Reibel's allegations "cast a derogatory light on Mary Kay in the public record," P. Br. 20, it has failed to demonstrate that it will be prejudiced in the sense that the legal issues will be confused or that an undue burden will be placed on it during discovery if the allegations it has identified are not stricken from Reibel's answer. Accordingly, the court denies Mary Kay's Rule 12(f) motion to strike the allegations in Reibel's answer.

V

Mary Kay moves, in the alternative, for leave to reply under Rule 7(a)(7) to any remaining allegations in Reibel's answer.

Rule 7(a)(7) allows a party to file a reply to an opposing party's answer "if the court orders one." Mary Kay contends that allowing it to file a reply to Reibel's answer would permit Mary Kay to minimize the prejudice from Reibel's noncompliance with Rule 8, would sharpen the issues for summary judgment, and would obviate the need for irrelevant discovery to the extent Reibel's allegations are immaterial to the controlling legal standards for trademark infringement.

Although the court does not intend to suggest that a Rule 7(a) reply is required or even

necessary in this case,[7] because Mary Kay has requested leave to file one and because Reibel does not oppose this request, the court grants Mary Kay's motion. The court will permit Mary Kay to file a Rule 7(a) reply after Reibel has filed his amended counterclaims and affirmative defenses. *See infra* § VI.

VI

In his response to Mary Kay's motion, Reibel requests leave to replead his affirmative defenses and counterclaims. "Because the court's usual practice when granting a motion to dismiss is to permit . . . at least one opportunity to replead, the court will give [Reibel] an opportunity to amend [his] [affirmative defenses and counterclaims]." *Shah v. Univ. of Tex. Sw. Med. Sch.*, 54 F.Supp.3d 681, 707 (N.D. Tex. 2014) (Fitzwater, C.J.) (citing *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.)). "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d at 567-68. Because there is no indication that Reibel cannot, or is unwilling to, cure at least some of the defects that the court has identified, the court grants him 28 days from the date this memorandum opinion

---

[7]*See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1185 (3d ed. 2004) ("[A] reply to an answer ordinarily is unnecessary and improper in federal practice. However, Federal Rule 7(a) expressly permits the district court to order a reply to an answer . . . either on its own initiative or on a party's motion. . . . As a practical matter, however, a reply usually will not be ordered by the district court unless the answer contains new matter that warrants a response." (footnotes omitted)).

and order is filed to file an amended answer, affirmative defenses, and counterclaims.

* * *

Accordingly, for the reasons explained, the court grants Mary Kay's motion to dismiss Reibel's antitrust counterclaims, denies Mary Kay's motion to strike Reibel's affirmative defenses, denies Mary Kay's motion to strike impertinent and prejudicial allegations in Reibel's answer, grants Reibel leave to replead, and grants Mary Kay's alternative motion for leave to file a Rule 7(a) reply.

**SO ORDERED**.

June 14, 2018.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE