IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY KAY INC., | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| V. | § | No. 3:17-cv-2634-D |
| | § | |
| GERALD MATTHEW REIBEL, | § | |
| | § | |
| Defendant/Counterclaimant. | § | |

## MEMORANDUM OPINION AND ORDER ON MOTION FOR SANCTIONS[1]

Plaintiff/Counter-Defendant Mary Kay Inc. has filed a Motion for Sanctions, *see* Dkt. No. 43 (the "Sanctions Motion"), requesting "that, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 37(b)(2)(A)(ii), this Court sanction Defendant Gerald Reibel ('Reibel') for willfully violating this Court's September 13, 2018 order (Doc. No. 36) ('Order'), which granted Mary Kay's motion to compel discovery (Doc. No. 28), by prohibiting Reibel from introducing certain matters into evidence," *id.* at 1.

Senior United States District Judge Sidney A. Fitzwater has referred the Sanctions Motion to the undersigned United States magistrate judge for a hearing, if necessary, and determination under 28 U.S.C. § 636(b)(1)(A). *See* Dkt. No. 46.

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

Reibel filed a response, *see* Dkt. No. 53, and Mary Kay filed a reply, *see* Dkt. No. 55.

Judge Fitzwater ordered that the parties must complete discovery no later than December 14, 2018, *see* Dkt. No. 34 at 1, and that this case is set for trial on July 22, 2019, for a two-week docket, *see* Dkt. No. 57.

## Background

In the September 13, 2018 Order, the Court granted Mary Kay's Motion to Compel [Dkt. No. 28] and ordered

> Defendant/Counterclaimant Gerald Matthew Reibel to, by **October 4, 2018**, serve on Mary Kay's counsel complete responses – and produce all unproduced documents responsive to – Mary Kay's Document Request Nos. 3, 9, 10, 11, and 12 and serve on Mary Kay's counsel a complete answer to Mary Kay's Interrogatory No. 9, including, as Mary Kay more specifically requests, by "[s]upplement[ing] his responses to Document Request Nos. 3 and 9-12 after conducting a reasonable investigation for responsive documents and produce all responsive documents in his possession, custody, or control related to sales since September 26, 2013"; "[s]tat[ing] that he has no responsive documents to any of Document Request Nos. 3 and 9-12 to the extent Defendant does not, after conducting a reasonable investigation for documents"; "[s]upplement[ing] his response to Interrogatory No. 9 by providing a full and complete response after conducting a reasonable investigation of information available to him, his agents, or representatives"; and "[s]tat[ing] under oath that he lacks necessary information to make a full, fair and specific answer to an interrogatory and detail the efforts he made to obtain information allowing him to answer an Interrogatory, to the extent Defendant cannot answer Interrogatory No. 9 after conducting a reasonable investigation." Dkt. No. 35 at 9-10.

Dkt. No. 36 at 6. The Court explained that,

> [a]fter carefully considering the parties' briefing and Reibel's supplemental responses and answers, *see* Dkt. Nos. 32-1 & 32-2, the Court is persuaded that Mary Kay is correct.
> As to Interrogatory No. 9,

as the Fifth Circuit has observed, "[d]iscovery by interrogatory requires candor in responding.... The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information. A partial answer by a party reserving an undisclosed objection to answering fully is not candid. It is evasive." *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616-17 (5th Cir. 1977). The fact that an interrogatory calls for a thorough response – one that will take time and effort to answer – does not make it improper. *See Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 307-08 (5th Cir. 1973). Where an interrogatory answer "'as a whole disclose[s] a conscientious endeavor to understand the question[] and to answer fully [that question],'" a party's obligation under Rule 33 is satisfied. *Meltzer/Austin Rest. Corp. v. Benihana Nat'l. Corp.*, No. A-11-cv-542-LY, 2013 WL 2607589, at *3 (W.D. Tex. June 10, 2013) (quoting 8B WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. § 2177 (3d ed. 2010)). [An answering party] is not required to make an extensive investigation in responding to an interrogatory, but he must pull together a verified answer by reviewing all sources of responsive information reasonably available to him and providing the responsive, relevant facts reasonably available to him. *See* 8B WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. § 2174 (3d ed. 2013).

*Areizaga v. ADW Corp.*, 314 F.R.D. 428, 437 (N.D. Tex. 2016). This interrogatory asks Reibel to "[s]tate the terms of any return policy you provide for Mary Kay Products," and his amended and supplemental answer is: "I provide a 100% return, no questions asked." Dkt. No. 32-1 at 3. But Reibel's declaration in support of his response to the MTC explains in more detail: "I offer a no-questions-asked return policy for all items sold on eBay. Any item that is purchased is 100% refundable including shipping charges." Dkt. No. 32 at 9. And Mary Kay's Document Request No. 11 seeks "[a]ll documents or records related to your return policy," and Reibel's supplemental and amended response explains that "[e]ach listing that Defendant uses to sell Mary Kay products on Ebay has on it these two notices," followed by two screen shots. Dkt. No. 32-2 at 2. As Mary Kay observes, "[a]lthough the screen shots have links that say 'See details' and 'Learn more,' no additional information regarding such policies has been provided," and Reibel's "description of his return policy [in his amended and supplemental answer to Interrogatory No. 11] also does not provide such details." Dkt. No. 35 at 3. The Court agrees with Mary Kay that, until Reibel "provides complete details of his return policy

and produces documents reflecting his policy in place during the last four years, Defendant has not adequately responded to Mary Kay's" Interrogatory No. 9 and Document Request No. 11 and that Reibel therefore "must be compelled to provide a complete response to Interrogatory No. 9 and produce all documents relating to his return policy as requested by Document Request No. 11." *Id.*

The Court is likewise persuaded that Reibel should be ordered to respond completely to Mary Kay's Document Request Nos. 3 and 9 – seeking, respectively, "[a]ll documents related to Reibel's sale of Mary Kay Products" and "[a]ll documents or records related to your sales of Mary Kay Products on eBay under the 'reibjerr' storefront," Dkt. No. 32-2 at 1, 2 – "and produce individual eBay listings of his Mary Kay sales for the past four years," Dkt. No. 35 at 2, because, as Mary Kay explains in its reply,

> although Defendant provided records of his individual eBay purchases of Mary Kay products (Exhibits 6 and 7 of Defendant's Opposition), Defendant has failed to produce comparable records of Defendant's individual eBay sales in response to Document Request Nos. 3 and 9. *See* App'x to Pl.'s Mot. to Compel, Dkt. No. 29, Ex. A. Defendant has utterly failed to provide any eBay records reflecting the individual sales, which contain photographs documenting the advertised condition of the products, as well as any disclaimers, warrantees, or other representations provided. These individualized records are necessary to determine what information was actually provided to customers when they purchased Mary Kay products from Defendant, which is relevant to the issue of whether the products Defendant sells are materially different. *See Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 852-54 (N.D. Tex. 2009) (analyzing key factors related to the material difference standard for proving trademark infringement). These documents are within Defendant's control and are available to him through his eBay account in the same manner as were the purchase records he belatedly produced as Exhibits 6 and 7 to his Opposition.

*Id.*

And, as to Mary Kay's Document Request No. 12 – seeking "[a]ll documents or records related to your quality control procedures," Dkt. No. 32-2 at 3 – Reibel's supplemental and amended answer provides: "See response to request number eleven, incorporated here." *Id.* But, as the Court quoted above, that response to Document Request No. 11 relates to Reibel's return policy, *see id.* at 2, and, as Mary Kay notes, "contains

no information regarding Defendant's quality controls," Dkt. No. 35 at 3. The Court agrees with Mary Kay's assessment that Reibel "has also failed to respond properly and completely to Document Request No. 12" and that, if Reibel "does not have any documents or records relating to his quality control procedures, [he] must indicate as much, rather than evade responding to the request." *Id.* at 3-4 (citing *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014)).

Finally, as to Mary Kay's Document Request No. 10 – seeking "[a]ll documents or records related to any returns of Mary Kay Products to you," Dkt. No. 32-2 at 2 – Mary Kay explains that, although Reibel "supplemented his response to Document Request No. 10 to state that he is producing documents 'related to any returns of Mary Kay products to [Defendant],' *see* Suppl. Doc. Resp. No. 10, his production does not contain any documents reflecting product returns," Dkt. No. 35 at 4. The Court agrees that, if Reibel "has custody or control over any documents reflecting the actual return to Defendant of any products purchased from Defendant, including records concerning reimbursement, he must produce them" but that, if he "has no records of any products being returned to him, [he] must state as much." *Id.* (citing *Heller*, 303 F.R.D. at 485 (explaining that, "[i]n responding to [Federal Rule of Civil Procedure 34] discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, FED. R. CIV. P. 26(g)(1), the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence")).

Dkt. No. 36 at 2-5.

In its Sanctions Motion, filed on November 29, 2018, Mary Kay asserts that,

[t]o date and despite Mary Kay's requests, Reibel has refused to take any action to supplement his discovery responses or produce any additional documents. This has not occurred because Reibel is unable to comply with the discovery obligations set forth in this Court's Order; Reibel has instead declined to act because, in his view, he has no further discovery obligations under the Order. Mary Kay has repeatedly referred Reibel to the plain language in the Order that explains his obligations and requested that he comply with this Court's Order, but to no avail.

Since Reibel refuses to comply with his discovery obligations or this Court's Order mandating that he comply with his discovery obligations, Mary Kay has no choice but to request that this Court bar Reibel from introducing matters into evidence that relate to the specific discovery obligations set forth in this Court's Order that he has failed to meet. More

specifically, Mary Kay requests that this Court prohibit Reibel from introducing: (1) any evidence relating to the content of his listings of Mary Kay products, (2) any evidence relating to any return policy he offers for products sold through his "reibjerr" eBay storefront and of any product returns he has processed, and (3) documents relating to his quality control procedures. In addition, Mary Kay seeks to recover its reasonable attorneys' fees and expenses associated with this motion pursuant to Rule 37(b)(2)(c).

Dkt. No. 43 at 1-2.

According to Mary Kay,

[a]fter the Court issued its Order, counsel for Mary Kay and counsel for Reibel entered into an agreement in which Reibel was given an additional 14 days to fulfill his discovery obligations required by the Order in exchange for Mary Kay receiving an additional 14 days to provide responses to written discovery requests served by Reibel that had been due on October 10th. See App. 1-2 (Declaration of Christopher J. Schwegmann In Support of Plaintiff Mary Kay's Motion for Sanctions ("Schwegmann Decl."), at ¶ 2.) As a result of this agreement, Mary Kay's deadline to respond to Reibel's discovery was extended from October 10th to October 24th while Reibel's deadline to fulfill his discovery obligations set forth in the Order was extended from October 4th to October 18th. (*Id.*)

Before that agreement was reached, however, counsel for Reibel advised in an email that he did not believe Reibel had any further discovery obligations under this Court's Order. *See* App. 2 (Schwegmann Decl. at ¶ 3 and Exhibit 1 to Schwegmann Decl.) In response, counsel for Mary Kay detailed each of Reibel's outstanding discovery obligations in writing and directed Reibel to each page of this Court's Order that explains each obligation. *See* App. 2 and App. 4-9 (Schwegmann Decl. at ¶ 4 and Exhibit 1 to Schwegmann Decl.) On October 10th, counsel met in person to discuss this Court's award of Mary Kay's reasonable expenses and attorneys' fees. *See* App. 2 (Schwegmann Decl. at ¶ 5.) At the conference, counsel for Reibel again asserted that Reibel had no further discovery obligations and then failed to produce any documents or serve any supplemental discovery responses by October 18th. *See* App. 2-3 (Id. at ¶¶ 5-6.) On October 19th, counsel for Mary Kay sent another email urging Reibel re-read this Court's Order and comply with his outstanding discovery obligations. *See* App. 3 and App. 4-9(Id. at ¶ 7 and Exhibit 1 to Schwegmann Decl.)

Reibel did not respond to Mary Kay's October 19th email and, to date, has not served any further discovery responses or produced any further documents since he served supplemental discovery responses and produced some documents with his Response to Mary Kay's motion to compel on August 23rd. *See* App. 3 (Schwegmann Decl. at ¶¶ 8-9.) Notwithstanding, Mary Kay served responses to Reibel's written discovery requests on Reibel on October 24th. (*Id.* at ¶ 10.)

....

Although Mary Kay is seeking an award of its reasonable expenses and attorneys' fees that it incurred in preparing this motion, see Section II(C), *infra*, that sanction alone is insufficient to properly serve the purposes of Rule 37(b) and deter Reibel's frivolous disregard of this Court's Order. The discovery obligations set forth in the Order are plain as day, there can be no dispute that Reibel has not complied with them, and there is no defensible basis for Reibel to contend that he somehow has no further obligations under the Order. Moreover, communications from Reibel's counsel's make clear that Reibel's failure to comply with the Order is not the result of excusable neglect or inability to comply with the Order; Reibel has instead decided to simply not obey the Order. *See* App. 2-9 (Schwegmann Decl. at ¶¶ 3-9 and Exhibit 1 to Schwegmann Decl.) Thus, Reibel's violation of the Order can be considered nothing less than **willful**.

Although Reibel's willful misconduct could justify the "severest remedies under Rule 37(b) – striking pleadings or dismissal of a case," *Smith*, 685 F.3d at 488, Mary Kay instead requests that this Court impose the second-least-severe sanction listed in Rule 37(b)(2)(A) – "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence" – and bar Reibel from introducing matters into evidence that relate to the specific discovery responses and evidence discussed in the Order that he failed to correct and supplement. Specifically, Reibel should be prohibited from introducing: (1) any evidence relating to the content of his listings of Mary Kay products, (2) any evidence relating to any return policy he offers for products sold through his "reibjerr" eBay storefront and of any product returns he processed, and (3) documents relating to his quality control procedures. The first evidentiary bar is appropriate and directly related to Reibel's misconduct because this Court's Order required him to supplement his responses and provide responsive documents to Document Request Nos. 3 and 9, which sought "[a]ll documents related to Reibel's sale of Mary Kay Products" and "[a]ll documents or records related to your sales of Mary Kay Products on eBay under the 'reibjerr' storefront." As this Court explained in its Order, in response to these requests Reibel failed to produce any records of his

individual product listings and sales of Mary Kay products. (Doc. 36 at 4.) These records and their contents are relevant to the claims and defenses in this case because they are relevant to the issue of whether the Mary Kay products Reibel is selling and has sold to consumers are materially different from Mary Kay products sold to consumers by Mary Kay Consultants. (*Id.* (citing *MaryKay, Inc. v. Weber*, 601 F. Supp. 2d 839, 852-54 (N.D. Tex. 2009)). Reibel has had at least eight opportunities to produce these materials: (i) when he was initially served with Mary Kay's Document Requests; (ii) when he received Mary Kay's meet-and-confer correspondence regarding Reibel's deficient responses to the Document Requests (*see* Doc. No. 29 at 63-68); (iii) when Mary Kay filed its Motion to Compel; (iv) when Mary Kay filed its Reply; (v) when this Court issued its Order; and (vi-viii) when Mary Kay advised him twice in writing and once in person through his counsel to comply with the Order. *See* App. 2-9 (Schwegmann Decl. at ¶¶ 4-5, 7 and Exhibit 1 to Schwegmann Decl.) The discovery cutoff date (December 14, 2018) is fast approaching, and Reibel has still not produced these materials despite this Court's Order. The least severe sanction that will effectively address Reibel's continued misconduct and deter him and others from violating discovery orders is to prohibit Reibel from introducing any document or testimonial evidence relating to the content of his listings of Mary Kay products, including any disclaimers or images that may appear in product listings.

Reibel should be similarly prohibited from introducing any evidence relating to any return policy he offers for products sold through his "reibjerr" eBay storefront and of any product returns he processed. As discussed above, this Court concluded that Reibel failed to properly respond to Interrogatory No. 9 (which asked him to "[s]tate the terms of any return policy you provide for Mary Kay Products") and Document Request No. 11 (which asked him to produce "[a]ll documents or records related to your return policy") because Reibel produced no documents in response to Document Request No. 11 and his responses to these requests were independently incomplete and inconsistent with one another. (Doc. No. 36 at 3.) Mary Kay still has no idea what the details are of Reibel's return policy and whether or how any policy is executed in practice because Reibel has not provided "complete details of his return policy and produce[d] documents reflecting his policy in place during the last four years," despite this Court's order. (*Id.*) As with Reibel's failure to supplement his responses and provide responsive documents to Document Request Nos. 3 and 9, the only just and appropriate sanction is to bar Reibel from introducing any evidence that he was ordered to (but did not) provide in response to Interrogatory No. 9 and Document Request No. 11.

Finally, Reibel should also be prohibited from introducing any documents relating to quality control procedures he exercises over

products he sells through his "reibjerr" eBay storefront because he has failed to supplement his response and provide responsive documents to Document Request No. 12, which sought "[a]ll documents or records related to your quality control procedures." Because Reibel has not produced any responsive documents despite this Court's Order, he should be barred from later attempting to introduce any documents related to his quality control procedures.

Mary Kay recognizes that prohibiting a party from introducing designated matters in evidence is a significant sanction, and that "[o]ne judge in this circuit has observed that '[p]reclusion of evidence and/or defenses ... are drastic remedies generally confined to exceptional cases where a party's failure to provide requested discovery results in prejudice to the requesting party." *Dartson v. Villa*, No. 3:17-cv-569-M, 2018 U.S. Dist. LEXIS 123673, at *21 (N.D. Tex. Apr. 2, 2018) (quoting *Better Bags, Inc. v. Ill. Tool Works Inc.*, 939 F. Supp. 2d 737, 753 (S.D. Tex. 2013)). *Better Bags*, however, involved a "Motion for Sanctions" that (A) was not grounded in any "statute, rule, or other legal basis," and (B) argued that the court should exclude evidence supporting a party's defense and strike a third party witness's affidavit that was submitted at summary judgment because the third party allegedly "committed perjury" during his deposition and included false statements in his affidavit. *See* 939 F. Supp. 2d at 749-53. *Better Bags* thus did not involve a violation of any discovery order or alleged misconduct by a "party or a party's officer, director, or managing agent," see FED. R. CIV. P. 37(b)(2)(A), and the facts of the case bear no resemblance to the facts of this case.

*Certain Underwriters at Lloyd's of London v. Corporate Pines Realty Corp.*, No. H-06- 3361, 2008 U.S. Dist. LEXIS 73985 (S.D. Tex. Sep. 25, 2008) and *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs.*, No. 3:16-cv-3198-B, 2018 U.S. Dist. LEXIS 161976 (N.D. Tex. Aug, 31, 2018) are much more analogous to the facts of this case. In *Certain Underwriters*, under Rule 37(b)(2) the court barred the defendant from submitting evidence on designated matters (including the defendant's alleged lost business income and any documents that the defendant had not produced by a certain date) because the defendant had obstructed and not obeyed discovery orders the court had issued. 2008 U.S. Dist. LEXIS 73985, at *1-9. On appeal, the Fifth Circuit held that the district court did not abuse its discretion in excluding evidence as a Rule 37(b) sanction. *Certain Underwriters at Lloyd's of London v. Corporate Pines Realty Corp.*, 355 F. App'x 778, 780 (5th Cir. 2009). In *Lincoln Gen.*, meanwhile – just as in this case – the defendant failed to obey an order that granted the plaintiff's motion to compel and ordered the defendant to produce responsive documents. 2018 U.S. Dist. LEXIS, at *1-4, 8. The court concluded that the defendant's failure to produce responsive

documents and his behavior at a deposition "demonstrate his willful disregard for ... his discovery obligations under the prior order" and struck the defendant's pleadings, a more severe sanction than Mary Kay seeks in this case. *Id.* at 8-12. Each of these cases, as well as the "broad discretion" granted by Rule 37(b)(2), provides ample support for this Court to prohibit Reibel from introducing designated matters in evidence as a sanction for his flagrant disregard of the Order.

Here, even if this Court believes there must be some showing of prejudice to warrant the requested sanctions, Mary Kay has indeed been prejudiced because it has been unable to review relevant evidence that Reibel was required to produce more than one month ago. Mary Kay has been waiting to depose Reibel until he complies with all of his outstanding discovery obligations in this Court's Order, but Mary Kay must now move forward with deposing Reibel without complete discovery responses or document productions because of the impending discovery cutoff date. Further, for each day that Reibel refuses to produce evidence ordered by this Court, Mary Kay may risk the loss of information available to Reibel through his eBay account.

It also bears emphasis that, in addition to reimbursing the movant, Rule 37(b) sanctions are intended to "[deter[] the violator of the discovery orders (as well as other potential violators)" and "the primary purpose of sanctions is to deter frivolous litigation and abusive tactics." *Day*, 788 F.2d at 1114; *Celanese Corp.*, 2016 U.S. Dist. LEXIS 98390, at *9. If this Court declines to bar Reibel from introducing any evidence and merely awards Mary Kay its reasonable expenses and attorneys' fees – the same sanction that was previously imposed when Reibel failed to fulfill his discovery obligations regarding the same discovery requests at issue in this motion – it would be a signal that litigants can freely disregard the court's discovery orders without any adverse consequence apart from a potential monetary fine. Reibel's misconduct warrants a more serious sanction than only a monetary sanction under Rule 37(b)(2)(C).

*Id.* at 9-14 (emphasis in original; footnote omitted).

And, Mary Kay explains, explains:

[u]nder Rule 37(b)(2)(c), Mary Kay is entitled to its "reasonable expenses, including attorney's fees" that it incurs in preparing this motion, any reply brief that it files to this motion, and in preparing for and appearing at any hearing that is held on this motion. It is Reibel's burden to show that he was "substantially justified" in ignoring this Court's Order, and no reasonable person could conclude that his conduct was appropriate.

*See Samsung*, 321 F.R.D. at 278; *Lincoln Gen.*, 2018 U.S. Dist. LEXIS 161976, at *5-6.

*Id.* at 14-15.

Mary Kay's Sanctions Motion is supported by the Declaration of Christopher J. Schwegmann, which provides:

1. My name is Christopher J. Schwegmann. I am a partner of the law firm Lynn Pinker Cox & Hurst, LLP in Dallas, Texas, and counsel of record for Mary Kay Inc. ("Mary Kay") in this action. I am over the age of 21, have never been convicted of a crime, and am a member in good standing of the Bars of Texas and New York. I am fully competent to make this declaration, and the facts set forth below are based upon my personal knowledge.

2. Following the issuance of the court's order ("Order") that granted Mary Kay's motion to compel and ordered Defendant Gerald Reibel ("Reibel") to "serve on Mary Kay's counsel complete responses – and produce all unproduced documents responsive to" – several Document Requests and one Interrogatory (see Doc. No. 36 at 6), I negotiated an extension of Reibel's deadline to fulfill his discovery obligations delineated in the Order. Specifically, I agreed that Reibel could have an additional 14 days to fulfill his discovery obligations in exchange for Mary Kay being given an additional 14 days to provide responses to written discovery requests served by Reibel that had been due on October 10, 2018. As a result of this agreement, Mary Kay's deadline to respond to Reibel's discovery was extended from October 10, 2018 to October 24 while Reibel's deadline to fulfill his discovery obligations set forth in the Order was extended from October 4 (the date provided in the court's Order) to October 18.

3. Before this agreement was reached, counsel for Reibel, Warren V. Norred, wrote in an email to me on October 8 that I should "check if you think we haven't give [sic] you everything. I think we're good at this point. (Remember that much of the info is in the spreadsheets.)" A true and correct copy of Mr. Norred's October 8 email to me is included in the email chain that is attached as Exhibit 1 to this Declaration.

4. On October 9, I responded to Mr. Norred's email and explained that the court's Order requires Reibel to serve supplemental discovery response and produce additional documents. I detailed each of Reibel's discovery obligations and directed Mr. Norred to each page of the Order that explains each obligation. A true and correct of my October 9 email

to Mr. Norred is included in the email chain attached as Exhibit 1 to this Declaration.

5. On October 10, I met in person with Mr. Norred to discuss the court's award of Mary Kay's reasonable expenses and attorneys' fees in the Order. At the conference Mr. Norred again asserted that, in his view, the Order did not impose any further discovery obligations on Reibel and that everything Reibel was required to produce was in the spreadsheets he had produced simultaneously with his Response to Mary Kay's Motion to Compel. I stated my disagreement and advised Mr. Norred to review the Order.

6. Reibel did not produce any documents or serve any supplemental discovery responses on or before October 18.

7. On October 19, I sent another email to Mr. Norred that urged him to "[p]lease reread the court's order granting the motion to compel when convenient." I added that "[t]he production of those spreadsheets was not enough. Reibel was also required to amend his responses to the interrogatories and document requests as discussed in the memorandum opinion and order. In the email below, I tried to point out the specific deficiencies that should be fixed, but please call/email with any questions." A true and correct of my October 19 email to Mr. Norred is included in the email chain attached as Exhibit 1 to this Declaration.

8. To date, I have not received a response to my October 19 email to Mr. Norred.

9. To date, Reibel has not produced any documents or served any supplemental discovery responses since he served supplemental discovery responses and produced some documents along with his Response to Mary Kay's Motion to Compel on August 23.

10. Mary Kay served responses to Reibel's written discovery requests on Reibel on October 24.

Dkt. No. 44 at 3-5 of 11.

Reibel filed a response, "to show he has sought to earnestly satisfy Mary Kay's discovery demands, and to argue sanctions are inappropriate in this case":

1. Plaintiff Mary Kay is suing Defendant for trademark infringement based on Defendant's efforts to sell Mary Kay products as a non-Mary Kay consultant.

2. After failing to browbeat Defendant into giving up, Mary Kay has adopted a 'win by procedure' stance, asserting that Defendant is willfully violating discovery rules and asserting that Defendant should

just follow the "plain language" of the Court's order" when queried about what it thinks it is still owed.

3. Defendant has attempted to satisfy Mary Kay's unceasing demands, even offering access to its online accounts during deposition. Nothing is enough.

....

4. Plaintiff has stated a number of facts in its rendition of the facts of this case, and while each fact stated has a germ of truth, it also omits important information to create a false narrative.

5. As Mary Kay stated, it filed a Motion to Compel on August 2, 2018, and at that time, as Plaintiff states, "Reibel had not produced a single document in response to Mary Kay's Document Requests." But Mary Kay neglects to inform the Court that Reibel did timely respond to Mary Kay's discovery requests, and states at the beginning of his response that he would provide responsive documents at the office of his attorney. ....

6. Though Plaintiff continuously complains that Defendant is hiding information and refusing to provide documents, its counsel did not appear on March 30 to examine any documents.

7. The Court can further observe that Reibel has sought to provide exhaustive and complete responses on the most material and relevant requests. When answering the discovery requests on August 23, 2018, Defendant provided an Excel spreadsheet and substantial documents in a very usable form.

8. Defendant's counsel has at every turn stated that it was clear that Plaintiff's counsel understands the eBay and PayPal systems better than Defendant, and if Mary Kay can exhume some mountain of yet more data, its counsel was willing to cooperate. Plaintiff instead would prefer to use this Court to browbeat Defendant over nearly irrelevant issues such as some sort of secret return policy.

9. The screenshots provided with Reibel's August 23, 2018 responses showing the return policy were all that Defendant had at the time. The "see details" links each went to each of the other screenshot locations; these two locations were the extent of the policy.

10. Later on, Reibel has simply used eBay's standard policies, shown in the attached exhibit, which is the Second Supplement to Mary Kay's Discovery Requests, which include eBay's standard return pages. Moreover, in spite of Mary Kay's caterwauling about this issue, Mary Kay knows already what the current policies are, as it produced two of Reibel's eBay listings during his deposition. Reibel has attached those listings as Exhibits 19 and 20 to this response, along with his Second Supplement.

11. Mary Kay can complain about these issues and argue that Reibel has failed to give it the full document, but cannot complain that it is being denied any substantive answer to any question that imperils its attack on Reibel's attempts to satisfy a market that Mary Kay wants to keep hungry.

12. In fact, when Mary Kay demanded that Reibel travel from his home in Colorado to Texas for deposition on December 14, 2018. As a reminder, Reibel would remind the Court that he was sued in Texas based only his Internet sales of Mary Kay product, a standard that would not support venue under last year's *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. ___ (2017).

13. Rather than fight venue in this case, Reibel has participated and came willingly for deposition in Texas, bringing with him his business records, and offered even to allow opposing counsel to dance around in his online business records, assuming that opposing counsel knows exactly how to extract whatever records sought by Mary Kay, and recognizing that this suit is just one of dozens of identical suits filed by Mary Kay so its attorneys know well how to manipulate the system. Opposing counsel did not accept that offer. *See* Exhibit B, which shows a portion of the deposition where the emails were discussed in depth. Defendant made no attempt at disingenuous obstruction, and even offered opposing counsel the option of logging into his accounts after the deposition.

14. Reibel recognized during the deposition that there exists an entire set of emails that may be responsive. The undersigned has been attempting to convert that list of more than 100,000 emails into a usable format, and only today has located a reasonable method of producing them, though they will not be complete for another day or two.

15. Plaintiff complains that Reibel has not produced any sales records, though Reibel produced an entire spreadsheet of sales documents. But NOW, Plaintiff says that it needs the pictures to find out what information was provided to customers, as though that is an actual problem or allegation.

16. To be clear, the only real issue in this case is the problem that Mary Kay has with non-distributors selling its products without its permission. There is no substantial allegation that Reibel is selling knock-off product that was never created by Mary Kay. Nor is there any real allegation that Reibel is selling sun lotion as though it is facial cream.

17. In spite of the extensive documentation already produced, Reibel is producing the last 90 days of sales concurrent with this Objection, which is all he recognizes is available. Reibel is also providing more than 100,000 emails to clients, but that process is taking longer

than expected. If Mary Kay believes that he is hiding some document or secretly has some insane return policy, then the undersigned invites opposing counsel to meet with the Court in camera so Mary Kay can teach us all how to extract all the documentation it desires.

....

18. As Mary Kay has noted in its Motion and Reibel agrees, district courts have broad discretion. In this case, a sophisticated and practiced litigant is repeating its standard tactics used dozens of times before against unsophisticated sellers of used and gray merchandise. While Reibel may not be as timely as Mary Kay would like, he has not sought to hide any information, and as Mary Kay continues to teach him, he is learning his duties and providing the information. Even the undersigned, who would like to think of himself as fairly versed in technology, cannot claim to be an expert in exhuming eBay documents, and the standard for issuing sanctions in a case like this should not be "We asked him for a barely relevant matter that is not really at issue, and he failed to give us the magic words."

19. Reibel is filing a set of exhibits concurrent with this response that includes a new supplement and the exhibits discussed above.

....

Reibel here prays the Court will recognize that Mary Kay has not actually been damaged by any alleged failing, and that Mary Kay has even refused to take advantage of an open invitation to enter Reibel's private records and obtain files, and it choose not to. This Court should not reward the gamesmanship under these circumstances, and deny sanctions.

Dkt. No. 53 at 1-6.

Reibel's response is also supported by the Declaration of Warren V. Norred, which provides:

My name is Warren V. Norred, my date of birth is February 21, 1963 and my work address is 515 E. Border in Arlington, Texas, and I declare under penalty of perjury that I have personal knowledge of the following statements, which are true and correct, particularly the following:

1) The factual allegations contained in paragraphs 4-17 of the foregoing Objection which I am filing on behalf of my client.

2) Reibel is not only out of the state, but is currently not at home and unable to sign this verification personally. However, I do have the

personal knowledge generally necessary to make the statements in this Objection.

*Id.* at 7.

On January 11, 2019, Mary Kay filed a reply, asserting that,

[o]nce again, Defendant Gerald Matthew Reibel has conceded that he failed to fulfill his discovery obligations and has attempted to save himself from sanctions by producing new documents and serving supplemental discovery responses with his response brief ("Response"). As was the case with the materials Reibel produced with his response brief to Plaintiff Mary Kay Inc.'s motion to compel (*see* Doc. Nos. 32), however, these new materials do not satisfy Reibel's discovery obligations in this action and Mary Kay continues to lack relevant evidence that is and has been in Reibel's possession. Additionally, this time Reibel's misconduct continues to violate this Court's order in addition to the Federal Rules of Civil Procedure. Rather than acknowledging his disobedience, Reibel spends most of his Response treating his discovery obligations with sarcasm and disdain and arguing that Mary Kay is somehow in the wrong for moving for sanctions after Reibel failed to fulfill very specific and straightforward discovery obligations that were ordered by this Court. (Doc. No. 36 at 1-6.) Because of Reibel's continued violation of this Court's order, his continued failure to produce relevant evidence, and all of his misconduct discussed below and in Mary Kay's motion for sanctions (Doc. 43), this Court should prohibit Reibel from introducing at trial (1) any evidence relating to the content of his listings of Mary Kay products and (2) any evidence relating to any return policy he offers for products sold through his "reibjerr" eBay storefront and of any product returns he has processed, in addition to awarding Mary Kay its reasonable attorneys' fees and expenses associated with this motion.
As Reibel admits in his Response, Mary Kay also learned for the first time at Reibel's deposition – on December 14, 2018 – that Reibel possesses and had inexplicably not produced "12,552 email threads containing 100k+ emails to and from his clients" (Doc. 54 at 3), many of which include communications about Reibel's sales of Mary Kay products that are the focus of this action. Although Reibel contended at his deposition that he had not produced these emails because Mary Kay "didn't ask for them" (Doc. 54 at 36-37), he appears to have backed away from that outrageous position in his Response and has represented that they will be produced. (Doc. 53 at ¶ 14.) Unfortunately, Reibel did not begin producing these materials until late in the day on January 10, 2019, one day before Mary Kay's deadline to file this brief, despite

Reibel's assertion in his Response (filed on December 29) that the emails would be produced in "another day or two." (*Id.*) Because Reibel is producing an enormous amount of evidence after the close of discovery – including the tardy documents he already produced with his Response – this Court should also order Reibel to sit for and pay the costs of a second deposition, at Mary Kay's counsel's office, in which Mary Kay can question him about all materials he did not produce until after the close of discovery.

Dkt. No. 55 at 1-2.

And Mary Kay provided the following "Additional Facts":

After Mary Kay filed its motion for sanctions on November 29, 2018 (Doc. No. 43), it took Reibel's deposition on December 14, the last day of discovery in this action (*see* Doc. No. 34). (*See* App. 1, Declaration of Christopher J. Schwegmann In Support of Reply Memorandum to Plaintiff Mary Kay's Motion For Sanctions ("Schwegmann Decl."), at ¶ 2.) Prior to the deposition, Reibel did not produce any additional documents or serve any supplemental discovery responses beyond what he produced on August 23, 2018 at the time he filed his response brief (Doc. No. 32) to Mary Kay's motion to compel. (App. 1-2, Schwegmann Decl. at ¶ 3.)

During his deposition, Reibel revealed for the first time that his eBay customers have sent him numerous communications through a messaging system on the eBay website. (Doc. No. 54 at 30-40.) Reibel admitted that: (1) he has received thousands of communications from his customers, both before and after products are delivered; (2) he responds to the communications; and (3) many of the communications include questions and comments about Mary Kay products that Reibel sells, including regarding their age, date codes, expiration dates, Mary Kay packaging, quality, smell, consistency, and why products "look gross." (Doc. No. 54 at 30-40.)

Reibel also admitted that he has been selling Mary Kay products on eBay since 2015, he has sold thousands of Mary Kay products, and that approximately 50 percent of the Mary Kay products he sells are expired, including products that could be 20 years past their manufacture date. (*See* App. 8-15, Exhibit 1 to Schwegmann Decl., at 37:25-38:3, 39:19-41:18; 111:5-12, 135:9-25, 141:6-24.)

At the time of his deposition, the only communications with customers that Reibel had produced were a small quantity of "Notes" that customers had apparently sent him at the time they purchased a product from Reibel through the eBay website. (App. 2, Schwegmann Decl. at ¶ 4.) The "Notes" ask Reibel to ship products in a certain way, such as

without including a receipt because the product is a gift, and Reibel explained at his deposition that he is unable to respond to these "Notes" and simply does what the Notes request. (App. 2, Schwegmann Decl. at ¶ 4; *see also* App. 16-17, Exhibit 1 to Schwegmann Decl., at 172:4-173:17.) Mary Kay had believed that these and online reviews of Reibel's eBay storefront were the only written customer communications that existed because, when May Kay had asked Reibel to produce "[a]ll complaints related to your sales of any Mary Kay Products," "[a]ll communications with your customers concerning, referring, or relating to your return policy," and "[a]ll communications with your customers concerning, referring, or relating to the sale of Mary Kay products," Reibel had responded that he had no responsive documents except for the communications that were included in the documents he produced on August 23 and the customer reviews that could be seen online. (See Doc. 32-2, Reibel's First Supplemental and Amended Responses to Mary Kay's Requests for Production, at Request for Production Nos. 16-18.) In response to Mary Kay's request for "[a]ll documents related to Reibel's sale of Mary Kay Products," Reibel had also similarly referred Mary Kay solely to the documents he produced with his discovery responses without objecting or indicating that he possessed any other responsive documents. (*See id.* at Request for Production No. 3.)

Mary Kay was therefore stunned to discover that Reibel had access to thousands of responsive communications that had not been produced despite the Court's heavy involvement in the discovery phase of this case. When Mary Kay asked Reibel during his deposition why his eBay messages with his customers had not been produced, his only explanation was that Mary Kay "didn't ask for them." (Doc. No. 54 at 36-37.) Reibel also testified that, at least when he looked at his eBay messages through his phone, he could only access messages going back 60 days and may not have access to older messages. (*Id.* at 30-32.) After the deposition was over, however, counsel for Reibel acknowledged that the eBay messages likely included responsive materials and offered to let counsel for Mary Kay access Reibel's eBay account, with counsel for Reibel looking over counsel's shoulder, and identify messages that counsel believed were responsive and should be produced. (App. 2, Schwegmann Decl. at ¶ 6.; *see also* Doc. 53, Reibel's Response to Motion for Sanctions, at ¶ 13 (explaining that Reibel "offered even to allow opposing counsel to dance around in his online business records, assuming that opposing counsel knows exactly how to extract whatever records sought by Mary Kay, and recognizing that this suit is just one of dozens of identical suits filed by Mary Kay so its attorneys know well how to manipulate the system.").) Counsel for Mary Kay declined this offer and explained that it is Reibel's discovery obligation – and not Mary Kay's responsibility – to review

materials in his possession, custody, or control and then produce all responsive materials. (App. 2, Schwegmann Decl. at ¶ 6.)

Despite Reibel's representation in his Response that his eBay messages would be produced in "another day or two" (Doc. No. 53 at ¶ 14), Reibel did not begin producing the messages until late in the day on January 10, 2019, one day before the filing deadline for this brief. (App. 2-3, Schwegmann Decl. at ¶ 7.) Mary Kay obviously did not have time to review more than 100,000 emails before filing this brief. (App. 2-3, Schwegmann Decl. at ¶ 7.)

*Id.* at 2-5.

And, based on these additional facts, Mary Kay's reply offers the following arguments in support of its request for sanctions:

A.   Reibel should be prohibited from introducing any document or testimonial evidence relating to the content of his listings of Mary Kay products, including any disclaimers or images that may appear in product listings.

Reibel must be prohibited from introducing any evidence relating to the content of his listings of Mary Kay products because he violated this Court's order requiring him to produce this evidence and has still not produced this evidence. As recounted in Mary Kay's opening brief, this Court previously concluded that:

[A]lthough Defendant provided records of his individual eBay purchases of Mary Kay products (Exhibits 6 and 7 of Defendant's Opposition), Defendant has failed to produce comparable records of [his] individual eBay sales in response to Document Request Nos. 3 and 9.... Defendant has utterly failed to provide any eBay records reflecting the individual sales, which contain photographs documenting the advertised condition of the products, as well as any disclaimers, warrantees, or other representations provided. **These individualized records are necessary to determine what information was actually provided to customers when they purchased Mary Kay products from Defendant, which is relevant to the issue of whether the products Defendant sells are materially different.** *See Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 852-54 (N.D. Tex. 2009) (analyzing key factors related to the material difference standard for proving trademark infringement). These documents are within Defendant's

control and are available to him through his eBay account in the same manner as were the purchase records he belatedly produced as Exhibits 6 and 7 to his [Response].

(Doc. 36 at 4 (quoting Doc. 35, Mary Kay's Reply, at 2.) (emphasis added)).

The materials that Reibel produced along with his Response do not include any of Reibel's listings of individual Mary Kay products that would show how Reibel represents himself and the products he sells to eBay customers. (App. 3, Schwegmann Decl. at ¶ 8; *see also* Doc. No. 54 at 3-29.) In his Response, Reibel argues that:

But NOW, Plaintiffs says that it needs the pictures to find out what information was provided to customers, as though that is an actual problem or allegation. To be clear, the only real issue in the case is the problem that Mary Kay has with on-distributors selling its products without its permission. There is no substantial allegation is selling knock-off product that was never created by Mary Kay. Nor is there any real allegation that Reibel is selling sun lotion as though it is facial cream.

(Doc. 53 at ¶¶ 15-16.) These assertions demonstrate a complete lack of understanding of the legal claims at issue in this case. Mary Kay has alleged in this case that Reibel is liable for trademark infringement, unfair competition, and other torts because he is selling non-genuine Mary Kay products that are outside of Mary Kay's legitimate quality controls, do not adhere to Mary Kay's quality controls (underscored by his sales of thousands of long-expired products), and are not covered by Mary Kay's money-back satisfaction guarantee that applies to all products that were purchased from Mary Kay Independent Beauty Consultants. (*See* Doc. No. 1, Complaint, at ¶¶ 20-21, 28-29, 31-36, 45-47.) Many of Mary Kay's claims require it to show that Reibel is creating a "likelihood of confusion" by selling products bearing Mary Kay's trademarks without its permission, *see Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017); *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 483-84 (5th Cir. 2004), and Mary Kay has alleged, in accordance with case law, that Reibel's sales of products manufactured by Mary Kay are creating a likelihood of confusion because: (1) consumers are likely to falsely believe that Reibel is Mary Kay or is authorized or otherwise approved by Mary Kay (*e.g.*, Doc. No. 1 at ¶ 45); and (2) he is selling poor-quality products that are materially different from genuine products sold by Mary Kay Consultants (*e.g.*, Doc. No. 1 at ¶ 47). *See Mary Kay, Inc. v. Weber*, 661 F. Supp. 2d 632, 642-43 (N.D. Tex. 2009); *Mary Kay Inc. v. Weber*, 601 F. Supp. 2d 839, 852 (N.D. Tex. 2009); *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009).

Accordingly, contrary to Reibel's bluster, "what information was provided to customers" through his product listings is highly relevant evidence in this case. The contents of Reibel's product listings might amplify or alleviate consumer confusion and harm to Mary Kay's goodwill depending on how Reibel described himself and how he described and depicted the Mary Kay products he has advertised and sold. Mary Kay and this Court have repeatedly explained this to Reibel. Yet rather than doing what this Court ordered, Reibel has again failed to produce any of his product listings and has instead chosen to denigrate Mary Kay for continuing to demand evidence that this Court ordered Reibel to produce. As Mary Kay argued in its opening brief, there is simply no other sanction provided in Rule 37(b)(2)(A) that would effectively address Reibel's violations of this Court's order other than prohibiting Reibel from introducing any document or testimonial evidence relating to the content of his listings of Mary Kay products, including any disclaimers or images that may appear in product listings. [To the extent Reibel argues that he no longer has access to some of his past product listings, he at minimum should have begun preserving listings when he first began receiving cease and desist letters from Mary Kay in March 2017. (*See* Doc. No. 1 at ¶¶ 24-27.) Reibel was also served with Mary Kay's complaint on October 9, 2017. (*See* Doc. No. 6.) A party has a "duty to preserve" relevant evidence when it "knows or should know that certain evidence is relevant to pending or future litigation," *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 800 (N.D. Tex. 2011), and there can be no question that Reibel should have known that his listings of Mary Kay products are and would be elevant to litigation with Mary Kay.]

B.      Reibel should be prohibited from introducing at trial any document or testimonial evidence relating to the terms of any return policy he offers for products sold through his eBay storefront and of any product returns he processed.

Reibel should also be prohibited from introducing any evidence relating to the terms of any return policy he offers for products sold through his eBay storefront and of any product returns he processed. Although Reibel appears to have attempted to (finally) fulfill his discovery obligations with respect to this topic by producing certain materials (*see* Doc. 54 at 9- 20) and amending his response to Mary Kay's Document Request No. 11 (id. at 4), he has still not provided "complete details of his return policy" as this Court ordered him to do. (Doc. 36 at 3.) Specifically, Reibel has not amended his supplemental response to Mary Kay's Interrogatory No. 9 (asking him to "State the terms of any return policy you provide for Mary Kay Products"), which remains "I provide a 100% return, no questions asked." (*See* Doc. 32-1 at 3.) But the documents that Reibel produced with his Response demonstrate that

these cannot possibly be the "complete details" of his return policy because the documents explain that eBay customers must return products in a certain condition. (*See* Doc. 54 at 13-14 (explaining that "the condition you send the item back to the seller in is important" and that eBay customers may have their accounts suspended if they "disregard[] item conditions required for returns.").) Reibel's newly amended response to Document Request No. 11 also appears to state that Reibel only accepts product returns within 60 days of the date of purchase (*id.* at 4), which contradicts Reibel's response to Interrogatory No. 9 and also his sworn declaration in support of his response to Mary Kay's motion to compel (Doc. 32 at 9). [As this Court observed in its order granting Mary Kay's motion to compel (Doc. 36 at 3), Reibel's declaration is itself inconsistent with his interrogatory response and includes details that do not appear in his response. ("I offer a no-questions-asked return policy for all items sold on eBay. Any item that is purchased is 100% refundable including shipping charges.") Does Reibel require customers to ship returns within 60 days? Do customers have to return products in a certain condition: for example, unused or barely used? Has Reibel ever rejected a product return for any reason? Mary Kay still does not know. Reibel was ordered to answer these questions, but he has only created more confusion with his amended response to Document Request No. 11 and newly produced documents.

Accordingly, an evidentiary bar is appropriate for this category of evidence. If this Court declines to bar evidence relating to Reibel's return policy, however, Mary Kay should at a minimum be permitted to ask questions about Reibel's return policy at a second deposition, as discussed in further detail in the following section.

C.    Reibel should be ordered to sit and pay for a second deposition at the office of Mary Kay's counsel.

There can be no dispute that it is exceedingly improper for Reibel to fail to produce more than 100,000 emails that are highly relevant to Mary Kay's claims in this case. (*See* Doc. 54 at 3 (stating that Reibel "expects to eventually deliver a file of 12,552 email threads containing 100k+ emails to and from his clients"); Doc. 53 at ¶ 14 (recognizing that "there exists an entire set of emails that may be responsive.").) These communications will undoubtedly show how Reibel presents himself to consumers as well as how consumers perceive Reibel and the Mary Kay-branded products he sells. There is also no question that the emails were responsive to Mary Kay's requests for production in this case, which were initially served on February 21, 2018 and included requests for "[a]ll communications with your customers concerning, referring, or relating to the sale of Mary Kay products," "[a]ll complaints related to your sales of any Mary Kay Products," and "[a]ll documents related to Reibel's sale of

Mary Kay Products." (Doc. 28 at 4-6.) Rather than objecting to these responses or otherwise indicating that he was withholding responsive documents, Reibel answered these questions without objection and purported to produce all responsive materials in his possession. (*See* Doc. 32-2 at Request for Production Nos. 3, 16, 18.) As a result of Reibel's discovery responses, Mary Kay of course believed that it had all customer communications in Reibel's possession and it is severely prejudiced by Reibel's production of an enormous amount of new evidence after the close of discovery, including the documents produced with his Response and the more than 100,000 emails he began producing on the eve of January 10.

Reibel appears to believe that the prejudice to Mary Kay could have been reduced if Mary Kay had only accepted Reibel's offer to review Reibel's eBay messages itself through his eBay account – in other words, to fulfill Reibel's discovery obligations for him, on the last day of discovery, at Reibel's counsel's office. That is obviously not how discovery works. The only fair remedy is for this Court to order Reibel to sit for a second deposition at the office of Mary Kay's counsel in Texas and pay all associated costs. At the deposition, Mary Kay should be permitted to question Reibel about all the documents he produced after the discovery deadline as well as about the terms of Reibel's return policy if Reibel is not barred from offering evidence about his return policy. No lesser sanction would begin to remedy the prejudice Mary Kay has suffered as a result of Reibel's malfeasance.

Mary Kay also requests that it be given until February 15 to potentially file a separate motion requesting different relief regarding the more than 100,000 emails Reibel has just begun producing. Mary Kay has not yet been able to begin reviewing these materials, and it may wish to request additional relief once it has reviewed them.

D.    Mary Kay is entitled to its reasonable expenses and attorneys' fees relating to this motion.

Under Rule 37(b)(2)(C), this Court must order Reibel, his counsel, or both to pay for Mary Kay's reasonable expenses and attorneys' fees it incurred in briefing this motion unless it finds that Reibel's violation of this Court's order (Doc. 36) was "substantially justified or other circumstances make an award of expenses unjust." There is absolutely no basis to conclude that Reibel's violation of this court's order (which itself ordered Reibel to pay for Mary Kay's reasonable expenses and attorneys' fees) was in any way justified, and Reibel has conceded as much by once again producing new documents along with his Response. Put simply, the purposes of Rule 37(b) – including deterring the violator of a discovery order and potential future violators, *Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1114 (5th Cir. 1986) – require that this Court again order Reibel to

pay for Mary Kay's reasonable expenses and attorneys' fees in addition to the other relief requested above.

*Id.* at 5-11 (footnotes omitted; emphasis in original).

"For all of the foregoing reasons, Mary Kay respectfully requests that this Court grant Mary Kay's motion and hold that":

> 1. Reibel is prohibited from introducing at trial any evidence relating to the content of his listings of Mary Kay products, including any disclaimers or images that may appear in product listings;
> 2. Reibel is prohibited from introducing at trial any evidence relating to the terms of any return policy he offers for products sold through his "reibjerr" eBay storefront and of any product returns he processed;
> 3. Reibel must sit for and pay all costs for a second deposition, to be held at the office of Mary Kay's counsel in Texas, by a deadline to be set by this Court, but after Mary Kay has had a reasonable period of time to review all documents Reibel produced after the December 14, 2018 discovery deadline in this case;
> 4. By February 15, 2019, if it so chooses, Mary Kay may file a motion requesting additional relief relating to Reibel's production of more than 100,000 emails beginning on January 10, 2019; and
> 5. Reibel must pay for Mary Kay's reasonable expenses and attorneys' fees that it incurred in researching, drafting, and filing this reply brief and opening motion, in reviewing the new documents and discovery responses that Reibel produced contemporaneously with his response brief, and in preparing for and appearing at any hearing that is held on this motion.

*Id.* at 11-12. But "Mary Kay no longer requests that Reibel be prohibited from introducing any documents relating to quality control procedures he exercises over products he sells through his eBay storefront because he finally produced documents in response to Mary Kay's Document Request No. 12 and stated that 'no other documents exist.' (Doc. 54 at 4.) However, Mary Kay *does* request that it be permitted to be ask questions about Reibel's newly produced documents on this subject at a

second deposition because the documents were not produced until after the close of discovery." *Id.* at 9 n.4 (emphasis in original).

And Mary Kay relies for support on the Declaration of Christopher J. Schwegmann in Support of Reply Memorandum to Plaintiff Mary Kay's Motion for Sanctions, which provides:

> 1. My name is Christopher J. Schwegmann. I am a partner of the law firm Lynn Pinker Cox & Hurst, LLP in Dallas, Texas, and counsel of record for Mary Kay Inc. ("Mary Kay") in this action. I am over the age of 21, have never been convicted of a crime, and am a member in good standing of the Bars of Texas and New York. I am fully competent to make this declaration, and the facts set forth below are based upon my personal knowledge.
>
> 2. On December 14, 2018, I took the deposition of Defendant Gerald Reibel ("Reibel") at the office of Reibel's counsel. True and correct copies of excerpts of the transcript of Reibel's deposition are attached as Exhibit 1 to this Declaration.
>
> 3. At the time of Reibel's deposition, Reibel had not produced any additional documents or served any amended discovery responses since he had produced documents and served amended discovery responses on August 23, 2018, when he filed his response brief to Mary Kay's motion to compel. The documents that Reibel produced on August 23 were the entirety of the documents that Reibel had produced in this case.
>
> 4. The only communications between Reibel and his customers that were included within the documents Reibel produced on August 23, 2018 were a small quantity of "Notes" that customers had apparently sent to Reibel at the time that they purchased a product from him through the eBay website. The "Notes" ask Reibel to ship products in a certain way, such as without including a receipt because the product is a gift. Based on Reibel's discovery responses in this action, I believed that these "Notes" were the only communications with customers that were in Reibel's possession, custody, or control.
>
> 5. During his deposition, Reibel revealed that his eBay customers have sent him thousands of communications through a messaging system on the eBay website. Reibel admitted that he responds to these communications and that many of the communications relate to his sales of Mary Kay products.
>
> 6. After the deposition was over, counsel for Reibel acknowledged that these communications were likely responsive and offered to let me

access Reibel's eBay account through a laptop computer while counsel for Reibel looked over my shoulder. Counsel proposed that I personally review the emails stored in Reibel's eBay messaging system and identify the emails that I believed should be produced. I declined this offer and explained that it is Reibel's discovery obligation to review materials in his possession, custody, or control and then produce all responsive materials.

7. Late in the day on January 10, 2019, I electronically received what purported to be the first batch of emails that had been stored in Reibel's eBay messaging system. Reibel explained that I would be receiving additional materials within the next day, and he represented that there would be about 125,000 emails in total. As of the time this Declaration was filed, Mary Kay has not yet been able to review the first batch of emails that were produced late in the day on January 10.

8. To date, Reibel has not produced any individual listings of Mary Kay products that show how he represents himself and the products he sells to his eBay customers.

Dkt. No. 56 at 3-5 of 20.

## Legal Standards

Federal Rule of Civil Procedure 37(b)(2)(A) provides that, "[i]f a party ... fails to obey an order to provide or permit discovery, ... the court where the action is pending may issue further just orders. They may include the following: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; [or] (vi) rendering a default judgment against the disobedient party." FED. R. CIV. P. 37(b)(2)(A)(i)-(vi).

Rule 37(b)(2)(C) further requires that, "[i]nstead of or in addition to the orders [described under Rule 37(b)(2)(A)], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C). "A party's discovery conduct is found to be 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *S.E.C. v. Kiselak Capital Grp., LLC*, No. 4:09-cv-256-A, 2012 WL 369450, at *5 (N.D. Tex. Feb. 3, 2012) (quoting *Devaney v. Continental Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993) (in turn quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988))). "The burden rests on the party who failed to comply with the order to show that an award of attorney's fees would be unjust or that the opposing party's position was substantially justified." *Id.* at *3 (footnote omitted).

The undersigned has authority to enter a nondispositive order granting attorneys' fees as a sanction under Federal Rule of Civil Procedure 37 or denying a request for what might be considered a dispositive sanction. *See* 28 U.S.C. § 636(b); *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-17 (5th Cir. Unit A 1981) (per curiam); *Brown*, 2015 WL 410062, at *1-4.

Rule 37(b)(2) "empowers the courts to impose sanctions for failures to obey discovery orders. In addition to a broad range of sanctions, including contempt, FED. R. CIV. P. 37(b)(2) authorizes the court to impose a concurrent sanction of reasonable

expenses, including attorney's fees, caused by the failure to obey a discovery order."
*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012)
(internal quotation marks omitted); *see also Chilcutt v. United States*, 4 F.3d 1313,
1322 n.23 (5th Cir. 1993) ("Rule 37(b) clearly indicates that district courts have
authority to grant a broad spectrum of sanctions.").

"The district court has broad discretion under Rule 37(b) to fashion remedies
suited to the misconduct." *Smith*, 685 F.3d at 488 (internal quotation marks omitted).
"This discretion, however, is limited" based on the type of sanctions imposed. *Id.*
"[U]sually, ... a finding of bad faith or willful misconduct [is required] to support the
severest remedies under Rule 37(b) – striking pleadings or dismissal of a case." *Id.*
(internal quotation marks omitted); *accord Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d
1300, 1304 (5th Cir. 1988) ("We have repeatedly emphasized that a dismissal with
prejudice is a 'draconian' remedy, or a 'remedy of the last resort,' to be employed only
when the failure to comply with the court's order results from wilfullness or bad faith
rather than from an inability to comply. Nevertheless, deliberate, repeated refusals to
obey discovery orders have been held to warrant the use of this ultimate sanction."
(footnote omitted)); *Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 749
(5th Cir. 1987) (explaining that, "if the refusal to comply results from honest confusion
or sincere misunderstanding of the order, the inability to comply, or the nonfrivolous
assertion of a constitutional privilege, dismissal is almost always an abuse of
discretion."); *Tech. Chem. Co. v. IG-LO Prod. Corp.*, 812 F.2d 222, 224 (5th Cir. 1987)
("Entry of a default judgment is an appropriate sanction when the disobedient party

has failed to comply with a court order because of willfulness, bad faith, or other fault on its part, as opposed to its inability to comply with the court's order."); *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985) ("[D]ismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply.").

But "[l]esser sanctions do not require a finding of willfulness." *Smith*, 685 F.3d at 488. "Of course, the flagrancy of a party's behavior must be directly proportionate to the severity of the sanction imposed," but "the lack of willful, contumacious, or prolonged misconduct [does not] prohibit[] all sanctions." *Chilcutt*, 4 F.3d at 1322 n.23. Even where a party was "unable to comply with the discovery requests, the district court still ha[s] broad discretion to mete out a lesser sanction than dismissal." *Id.* (emphasis omitted). That is because "the type of conduct displayed by a party had no bearing on whether sanctions should be imposed, but only on the type of sanctions imposed," and "[t]he willfulness or good faith of [a party], can hardly affect the fact of noncompliance and [is] relevant only to the path which the District Court might follow in dealing with [the party's] failure to comply." *Id.* (internal quotation marks and emphasis omitted).

Rule 37(b) "is designed to empower the court to compel production of evidence by the imposition of reasonable sanctions." *Dorsey v. Acad. Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970). "Sanctions under Rule 37 serve the dual function of reimbursing the moving party and deterring the violator of the discovery orders (as

well as other potential violators)." *Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1114 (5th Cir. 1986).

Rule 37(b)(2) sanctions "must be both just and specifically related to the claim at issue in the discovery order." *Vicknair v. La. Dep't of Pub. Safety & Corr.*, 555 F. App'x 325, 332 (5th Cir. 2014). The sanction imposed should be the least severe sanction adequate to achieve the proper functions of Rule 37(b)(2) under the particular circumstances. *See Smith*, 685 F.3d at 488-90.

One judge in this circuit has observed that "[p]reclusion of evidence and/or defenses ... are drastic remedies generally confined to exceptional cases where a party's failure to provide requested discovery results in prejudice to the requesting party." *Better Bags, Inc. v. Ill. Tool Works, Inc.*, 939 F. Supp. 2d 737, 753 (S.D. Tex. 2013).

But courts have found sanctions excluding evidence or claims of damages appropriate where, for example, a party instructs its witness to violate a court order. *See Certain Underwriters at Lloyds London v. Corp. Pines Realty Corp.*, 355 F. App'x 778, 780 (5th Cir. 2009).

## Analysis

The evidence submitted by both parties makes clear that Reibel violated the Court's order to,

> by **October 4, 2018**, serve on Mary Kay's counsel complete responses – and produce all unproduced documents responsive to – Mary Kay's Document Request Nos. 3, 9, 10, 11, and 12 and serve on Mary Kay's counsel a complete answer to Mary Kay's Interrogatory No. 9, including, as Mary Kay more specifically requests, by "[s]upplement[ing] his responses to Document Request Nos. 3 and 9-12 after conducting a reasonable investigation for responsive documents and produce all

responsive documents in his possession, custody, or control related to sales since September 26, 2013"; "[s]tat[ing] that he has no responsive documents to any of Document Request Nos. 3 and 9-12 to the extent Defendant does not, after conducting a reasonable investigation for documents"; "[s]upplement[ing] his response to Interrogatory No. 9 by providing a full and complete response after conducting a reasonable investigation of information available to him, his agents, or representatives"; and "[s]tat[ing] under oath that he lacks necessary information to make a full, fair and specific answer to an interrogatory and detail the efforts he made to obtain information allowing him to answer an Interrogatory, to the extent Defendant cannot answer Interrogatory No. 9 after conducting a reasonable investigation." Dkt. No. 35 at 9-10.

Dkt. No. 36 at 6. He did so by failing to, prior to the deadline the Court set or the discovery cutoff, produce additional responsive documents regarding documents or records related to any returns of Mary Kay Products and documents related to Reibel's sale of Mary Kay Products, including recently produced documents regarding his return policy and more than 100,000 emails to clients that Reibel only recently produced. Reibel's offer on December 14, 2018 to allow Mary Kay's counsel to search for responsive documents does not remedy or remediate Reibel's violations of his own discovery obligations under the Court's order, which the Court finds were not substantially justified. Further, the Court finds that no other circumstances make an award of expenses unjust under Rule 37(b)(2)(C).

Consistent with the standards laid out above and these findings, the Court determines that the least severe sanctions adequate to achieve the proper functions of Rule 37(b)(2) under the particular circumstances here are orders to require that Reibel:

· must sit for and pay all costs for a second deposition, to be held at the office of Mary Kay's counsel in Texas, by **April 11, 2019**, at which Mary Kay will be

permitted to question Reibel about all the documents that he produced after the discovery deadline as well as about the terms of Reibel's return policy, and

- must pay for Mary Kay's reasonable expenses, including attorneys' fees, that it incurred in researching, drafting, and filing its Sanctions Motion and reply brief and that it incurs in preparing for and taking Reibel's second deposition, as the reasonable expenses caused by Reibel's failure to timely comply with the Court's September 13, 2018 order [Dkt. No. 36].

The Court has carefully considered Mary Kay's request to exclude Reibel from introducing certain evidence but determines that these sanctions ordered above properly achieve the dual purpose of reimbursing Mary Kay – including remedying or remediating the prejudice to Mary Kay from Reibel's violations – and deterring Reibel and other potential violators of discovery orders. If Reibel later attempts to present documentary evidence that should have been produced in discovery or testimonial evidence that should have been revealed in response to deposition questioning, Clariant may be able to move for an order excluding the specific evidence under Rule 37(b)(2) or Federal Rule of Civil Procedure 37(c)(1). That includes evidence relating to the content of Reibel's listings of Mary Kay products, including any disclaimers or images that may appear in product listings.

Mary Kay's counsel and Reibel's counsel are directed to meet face-to-face by **May 15, 2019** and confer about the reasonable amount of these attorneys' fees to be awarded under Rule 37(b)(2)(C).

By **May 29, 2019**, the parties must file a joint status report notifying the Court of the results of the conference. If all disputed issues as to the amount of attorneys' fees and costs to be awarded to Mary Kay have been resolved, Defendants' counsel must also send an agreed proposed order to the Court at Horan_Orders@txnd.uscourts.gov by **May 29, 2019**.

If the parties do not reach an agreement as to the amount of attorneys' fees and costs to be awarded to Mary Kay, Mary Kay must, by **June 12, 2019**, file an application for attorneys' fees that is accompanied by supporting evidence establishing the amount of the reasonable attorneys' fees (as described above) to be awarded under Rules 37(b)(2). The fee application must be supported by documentation evidencing the "lodestar" calculation, including affidavits and detailed billing records, and citations to relevant authorities and must set forth the itemized number of hours expended in connection with the recoverable attorneys' fees described above as well as the reasonable rate(s) requested. *See Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002).

If an application is filed, Reibel must file a response by **June 26, 2019**, and Mary Kay must file any reply by **July 10, 2019**.

## Conclusion

For the reasons and to the extent explained above, the Court GRANTS in part and DENIES in part Plaintiff/Counter-Defendant's Mary Kay Inc.'s Motion for Sanctions [Dkt. No. 43].

SO ORDERED.

DATED: March 11, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE